**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Joseph Czarnionka

    v.                                        Civil No. 12-cv-417-JL

Carolyn W. Colvin, Acting
Commissioner, Social Security
Administration


**REPORT AND RECOMMENDATION**


    Pursuant to 42 U.S.C. § 405(g), Joseph Czarnionka moves to reverse the Acting Commissioner's decision denying his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, I recommend that this matter be remanded to the Acting Commissioner for further proceedings consistent with this report and recommendation.


**Standard of Review**

    The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment

> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Commissioner] has committed a legal or

factual error in evaluating a particular claim.'"  Manso-Pizarro

v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting

Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's

findings of fact be supported by substantial evidence, "[t]he

substantial evidence test applies not only to findings of basic

evidentiary facts, but also to inferences and conclusions drawn

from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916,

917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727,

730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more

than [a] mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st

Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401

(1971)).  But, "[i]t is the responsibility of the [Commissioner]

2

to determine issues of credibility and to draw inferences from
the record evidence.  Indeed, the resolution of conflicts in the
evidence is for the [Commissioner], not the courts." Irlanda
Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir 1991)
(citations omitted).  Moreover, the court "must uphold the
[Commissioner's] conclusion, even if the record arguably could
justify a different conclusion, so long as it is supported by
substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529,
535 (1st Cir. 1988).  Finally, when determining whether the
decision of the Acting Commissioner in this case is supported by
substantial evidence, this court must "review[] the evidence in
the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting
Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material
Facts ("Joint Statement"), document no. 16.  That statement is
part of the court's record and will be summarized here, rather
than repeated in full.

Czarnionka has not worked since July 18, 2006, the date on
which he claims to have become disabled.  Prior to that, he
worked in construction, as a framer.

With respect to his physical condition, Czarnionka has been
diagnosed with degenerative disc disease, disc herniation, disc

3

bulging, chronic severe L5 disc degeneration and disc bulge,
disc bulging at L4-5, a central annular tear, mild spinal
stenosis, degenerative changes at C5-6, bilateral hand
paresthesias, annular bulging at the C5-6 and C6-7 levels, and
degenerative disc disease with posterior soft-tissue protrusions
at L4-5 and L5-S1.  His treatment for those conditions has
included physical therapy, exercise, injections, and medications
including Cymbalta, Oxycodone, Tylenol #3, Darvocet, and
Vicodin.  That said, the ALJ's assessment of Czarnionka's
physical capacity for work does not appear to be at issue.

With respect to his mental condition, Czarnionka has been
diagnosed at various times with anxiety and depression.  In
early 2009, Dr. Lawrence Jasper, a clinical psychologist, was
"authorized or contracted by the Disability Determination
Services to examine [Czarnionka.]"  Administrative Transcript
("Tr.") 516, and, on that basis, he performed a "Comprehensive
Psychological Profile – Adult Examination" Tr. 510, on
Czarnionka.  Based upon that examination, and his review of
various treatment records and other documents, Dr. Jasper made
the following diagnosis:

> Axis I:   Major depressive disorder, chronic,
>           moderate; Panic disorder without
>           agoraphobia; Rule out Posttraumatic stress
>           disorder in partial remission, arising from
>           the combined effects of the violent death of

his natural father and the subsequent
exposure to domestic violence.

Axis II:  Deferred.

Axis III: As reviewed earlier in this report by the
claimant; pain disorder due to multiple back
problems described by the claimant.[1]

Tr. 515.

In August of 2010, Czarnionka saw Cynthia Cahoon, D.N.P.

for an initial evaluation.  He presented with complaints of

depression and anxiety.  She made the following diagnoses, after

conducting a mental status examination:

Axis I:
Mood disorder NOS (r/o Bipolar NOS, possibly mixed)
Anxiety disorder with panic attacks

Axis II:
Deferred

Axis III:
DDD [degenerative disc disease] with chronic pain

Axis IV:
Patient has problems with: primary support group,
social environment, occupational, economic.[2]

---

[1] In the multiaxial assessment scheme described in the
American Psychological Association's Diagnostic and Statistical
Manual of Mental Disorders ("DSM-IV-TR") (4th ed. 2000), Axis I
refers to "Clinical Disorders" and "Other Conditions That May Be
a Focus of Clinical Attention," Axis II refers to "Personality
Disorders" and "Mental Retardation," and Axis III refers to
"General Medical Conditions."  Id. at 27.

[2] Axis IV refers to "Psychosocial and Environmental
Problems."  DSM-IV-TR, supra note 1, at 27.

Axis V (Current GAF): 45[3]

Tr. 571.

Czarnionka's mental conditions have been treated with
therapy and several medications including Zoloft[4] (prescribed for
anxiety), Cymbalta[5] (prescribed for chronic pain and depression),

---

[3] Axis V refers to a patient's "Global Assessment of
Functioning." DSM-IV-TR, supra note 1, at 27.  "A GAF score
represents 'the clinician's judgment of the individual's overall
level of functioning.'"  Nickerson v. Astrue, No. 1:11–cv–87–
GZS, 2012 WL 975641, at *2 n.2 (D. Me. Mar. 21, 2012) (quoting
DSM–VI–TR, supra, at 32.  "The GAF scale ranges from 100
(superior functioning) to 1 (persistent danger of severely
hurting self or others, persistent inability to maintain minimal
personal hygiene, or serious suicidal act with clear expectation
of death)."  Nickerson, 2012 WL 975641, at *2 n.2 (citation
omitted).  A GAF score of 41 to 50 indicates: "**Serious symptoms**
(e.g., suicidal ideation, severe obsessional rituals, frequent
shoplifting) **OR any serious impairment in social, occupational,
or school functioning** (e.g., no friends, unable to keep a job)."
DSM–IV–TR, supra, at 34 (emphasis in the original).  However,
"[t]he Commissioner [of Social Security] has declined to endorse
the GAF scale for use in the Social Security and SSI disability
programs and has indicated that GAF scores have no direct
correlation to the severity requirements of the mental disorders
listings."  Holliday v. Astrue, No. 5:12cv143-CAS, 2013 WL
105322, at *7 (N.D. Fla. Jan. 8, 2013) (quoting Wind v.
Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005); citing 65
Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)) (internal quotation
marks omitted).

[4] Zoloft is a "trademark for preparations of sertraline
hydrochloride."  Dorland's Illustrated Medical Dictionary 2120
(31st ed. 2007).  Sertraline hydrochloride is "a selective
serotonin reuptake inhibitor, used to treat depressive,
obsessive-compulsive, and panic disorders."  Id. at 1724.

[5] Cymbalta is a "trademark for a preparation of duloxetine
hydrochloride."  Dorland's, supra note 4, at 465.  Duloxetine
hydrochloride is "a serotonin-norepinephrine reuptake inhibitor,

Diazepam[6] (prescribed for agitation and mood swings), and Wellbutrin.[7]

In December of 2008, Colleen Mahoney, a social worker, completed a Mental Impairment Questionnaire on Czarnionka, and gave the following impressions of his abilities to function:

> 1) Daily Activities:
>    Unable to sit or stand for prolonged periods because of back pain.
>
> 2) Social Interactions:
>    Little to none outside of family.
>
> 3) Task Performance:
>    Limited by medical problems.
>
> 4) Stress Reaction:
>    Impaired – Becomes angry, impatient, difficulty with w/self regulation and soothing.

Tr. 509.

After conducting his consultative examination in January of 2009, Dr. Jasper provided the following assessment of Czarnionka's then current level of functioning:

> A. Understanding and Memory: He is able to understand and remember detailed instructions.

---

used for the treatment of major depressive disorder . . . ." Id. at 580.

[6] Diazepam is "a benzodiazepine used as an antianxiety agent in the treatment of anxiety disorders and for short-term relief of anxiety symptoms  . . . ." Dorland's, supra note 4, at 519.

[7] Wellbutrin is a "trademark for a preparation of bupropion hydrochloride." Dorland's, supra note 4, at 2107. Bupropion hydrochloride is "a monocyclic compound structurally similar to amphetamine, used as an antidepressant . . . ." Id. at 265.

B. Social Functioning: Despite impairments, he is able
to interact appropriately and communicate effectively
with family members, neighbors, and landlord.
However, he is not able at this time to interact with
friends or fellow employees.  This is largely due to
the significant underlying agitation.

C. Concentration and Task Completion: From a
psychological standpoint, he is able to sustain
attention and to complete short and simple tasks.

D. Adaptation to Work and Work-Like Situations: From a
psychological standpoint, the claimant is able to
tolerate stresses associated with the work setting as
they pertain to decision making, attendance, and
schedules, but not interaction with supervisors as
there are significant problems with dealing with
authority figures and significant underlying
agitation.

Tr. 514 (emphasis added).

In February of 2009, Dr. Craig Stenslie completed a

Psychiatric Review Technique form on Czarnionka.  In it, he

determined that Czarnionka had a depressive syndrome

characterized by: (1) psychomotor agitation or retardation; (2)

decreased energy; (3) feelings of guilt or worthlessness; and

(4) difficulty concentrating or thinking.  See Tr. 528.  He also

opined that Czarnionka had moderate restrictions in his

activities of daily living, marked difficulties in maintaining

social functioning, marked difficulties in maintaining

concentration, persistence or pace, and had one or two episodes

of decompensation, each of extended duration.  Those findings,

in turn, are sufficient to meet the definition of affective

8

disorders set out in the Listing of Impairments used by the Social Security Administration to determine whether a claimant is disabled.  See 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.04.[8]  Medical consultant G.R. Ibarra completed a form indicating his agreement with Dr. Stenslie's assessment.

In July of 2010, Ms. Mahoney completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) for Czarnionka.  With regard to understanding, remembering, and carrying out instructions, Ms. Mahoney noted no restriction in Czarnionka's abilities to: (1) carry out simple instructions; and (2) make judgments on simple work-related decisions.  She noted mild restrictions in his abilities to: (1) remember simple instructions; (2) remember complex instructions; (3) carry out complex instructions; and (4) make judgments on complex work-related decisions.[9]  With regard to interacting with supervisors, co-workers, and the public, and responding to changes in the routine of the workplace, she noted a mild restriction in his ability to interact appropriately with the public and moderate restrictions in his abilities to: (1) interact appropriately

---

[8] As the court explains more fully in the next section, if a claimant has an impairment that meets the definition of a listed impairment, he is disabled for the purpose of establishing eligibility for Social Security benefits.

[9] The scale of restrictions on the form Mahoney completed is this: none, mild, moderate, marked, and extreme.  Tr. 553.

with supervisors; (2) interact appropriately with co-workers;
and (3) respond appropriately to usual work situations and
changes in a routine work setting.  Ms. Mahoney also noted that
no other abilities were affected by Czarnionka's mental
condition.

This case has had a long and complicated procedural
history, some of which is relevant to Czarnionka's current
appeal.  In February of 2009, the state agency that reviews
social security disability claims determined that Czarnionka
"had severe mental impairments that met the level of severity in
Sections 12.04 and 12.06 of the Listings of Impairments
(Appendix 2 to Subpart P, Regulations No. 4)."  Tr. 333.  In an
order dated April 23, 2010, the Decision Review Board ("DRB") of
the Social Security Administration's Office of Disability
Adjudication and Review found that

> [t]he current evidence [did] not support the presence
> of any listing level mental impairment when
> considering the clinical findings of the above-
> mentioned consultative psychological evaluation [i.e.,
> the one conducted by Dr. Jasper] and given the absence
> of a longitudinal record reflecting treatment for
> emotional complaints.

Tr. 334.  On that basis, the DRB remanded the case to an ALJ,
with instructions that the ALJ: (1) "[o]btain additional
evidence concerning the claimant's mental and physical
impairments," id.; (2) "[e]valuate the claimant's mental

impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a," id.; (3) "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations," id.; and (4) "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's mental impairments," id.

On remand, the ALJ conducted a hearing during which he took testimony from a vocational expert ("VE") and from Dr. Alfred Jonas, who is a board-certified psychiatrist.  Based upon his review of the record, Dr. Jonas provided several different opinions, including his opinion that Dr. Jasper's psychological profile did not support a determination that Czarnionka's mental impairment meets or equals Listing 12.04, due to a lack of evidence to support a finding that the "paragraph B criteria"[10] are satisfied.  While Dr. Jonas testified extensively about whether Czarnionka's mental impairment met or equaled the severity a listing, he does not appear to have offered any

---

[10] The "paragraph B criteria" for the three impairments Dr. Jonas mentioned are measurements of the severity of those impairments, and involve four factors: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  See 20 C.F.R. § 404, Subpt. P, App. 1, Listings 12.04, 12.06 & 12.08.

opinion on either Czarnionka's mental RFC or Dr. Jasper's

opinion concerning Czarnionka's level of mental functioning.

After the hearing, the ALJ issued a decision that includes

the following relevant findings of fact and conclusions of law:

> 3. The claimant has the following severe impairments:
> degenerative disc disease lumbar spine and cervical
> spine and a personality disorder (20 CFR 404.1520(c)
> and 416.920(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals one of the listed impairments in 20 CFR Part
> 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . . .
>
> 5. After careful consideration of the entire record, I
> find that the claimant has the residual functional
> capacity to perform light work as defined in 20 CFR
> 404.1567(b) and 416.967(b) allowing for standing and
> walking for six hours; sitting six hours; and
> unlimited use of the upper and lower extremities.
>
> . . . .
>
> 6. The claimant is unable to perform any past relevant
> work (20 CFR 404.1565 and 416.965).
>
> . . . .
>
> 10. Considering the claimant's age, education, work
> experience, and residual functional capacity, there
> are jobs that exist in significant numbers in the
> national economy that the claimant can perform (20 CFR
> 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 318, 319, 320, 323.  Based upon the testimony of the VE, the

ALJ determined that Czarnionka could work as a collator

operator, as a cashier, as a marker, as a telemarketer, as a

"clerical," and as a document preparer.  The VE initially gave

that testimony in response to a hypothetical question from the

ALJ that incorporated the RFC assessment quoted above.

Thereafter, the VE testified that Czarnionka could perform those

same jobs in response to a hypothetical question that posited

the following limitations related to mental-health conditions:

> [H]e's able to function with no limitations with
> regard to carrying out simple instructions or making
> judgments on simple instructions.  Mild impairment
> with regard to remembering simple instructions.  Mild
> impairment with regard to remembering complex
> instructions and mild impairment with carrying out
> complex instructions and making decisions on complex
> instructions.  He has mild impairment in interacting
> with public and moderate impairment with interacting
> with co-workers and supervisors and responding
> appropriately to usual work situations and changes in
> a routine setting.

Tr. 639.  After the VE responded to the foregoing hypothetical,

the VE offered the following testimony:

> Q  If we assume – if we're basing off the fourth
> hypothetical that was just discussed – if instead, you
> assume that that person were not able to interact
> appropriately with fellow employees or supervisors due
> to underlying agitation, how would that affect your
> opinion?
>
> A  So, you saying that there would be a marked or –
>
> Q  Well, let's start with moderate.
>
> A  Moderate with co-workers and supervisors.
>
> Q  Correct.

13

A  That – well, that was what was included in the judge's hypothetical.

Q  Oh, I heard that as mild.  What if [he] changed it to marked?

A  If it were marked, then there would be no job.

Tr. 640-41.

**Discussion**

According to Czarnionka, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) erroneously determined that his mental impairment did not meet or equal a listing, and did so by giving inappropriate weight to the opinion of Dr. Jonas; and (2) rendered an RFC assessment that is not substantially supported by the evidence and is internally inconsistent.  See Cl.'s Mem. of Law (doc. no. 12-1) 4-5.  The court agrees with Czarnionka that the ALJ's RFC assessment is fatally flawed.  Thus, there is no need to address Czarnionka's challenge to the ALJ's step-three determination.

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  See 42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible for supplemental security income, a person must be

aged, blind, or disabled, and must meet certain requirements
pertaining to income and assets.  See 42 U.S.C. § 1382(a).  The
question in this case is whether Czarnionka was under a
disability.

For the purpose of determining eligibility for disability
insurance benefits,

> [t]he term "disability" means . . . inability to
> engage in any substantial gainful activity by reason
> of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A)
(setting out a similar definition of disability for determining
eligibility for SSI benefits).  Moreover,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him , or whether he would be hired if he
> applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB); see also 42 U.S.C.
§ 1382c(a)(3)(B) (setting out a similar standard for determining
eligibility for SSI benefits).

To decide whether a claimant is disabled for the purpose of
determining eligibility for either DIB or SSI benefits, an ALJ

15

is required to employ a five-step process.  See 20 C.F.R. §§

404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).

The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the [claimant] or other witness;
> and (3) the [claimant]'s educational background, age,
> and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797
F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690
F.2d 5, 6 (1st Cir. 1982)).

    B. Czarnionka's Argument

    With respect to the ALJ's RFC assessment, Czarnionka argues
that: (1) once the ALJ determined that his mental impairment was
severe at step two, he was obligated to incorporate a mental
limitation into his RFC; and (2) the ALJ failed to properly
evaluate the medical evidence.  Czarnionka's first argument is
incorrect.  See Hines v. Astrue, No. 11-cv-262-PB, 2012 WL
2752192, at *9 (D.N.H. July 9, 2012).  His second argument,
however, is meritorious.

    Czarnionka devotes the lion's share of his memorandum of
law to describing evidence that, in his view, the ALJ erred by
overlooking when making his step-three determination and
fashioning his RFC assessment.  Among other evidence, Czarnionka
points to Dr. Jasper's opinions that he was "not able . . . to
interact with friends or fellow employees," Tr. 514, and was
unable "to tolerate . . . interaction with supervisors," id.

    In the discussion of opinion evidence in the section of his
decision devoted to his RFC assessment, the ALJ explained that
he: (1) gave the most weight to Dr. Jonas's opinion concerning
Czarnionka's mental condition; (2) gave significant weight to a

17

Physical Residual Functional Capacity Assessment made by Dr.
Burton Nault in February of 2009; (3) gave relatively less
weight to a Physical Residual Functional Capacity Assessment
made by Dr. Jonathan Jaffe in January of 2007 and a Medical
Source Statement of Ability to Do Work-Related Activities
(Physical) provided by Dr. Avigdor Niv in July of 2007; (4) gave
limited weight to Ms. Mahoney's opinion on Czarnionka's mental
functional capacity; and (5) gave no weight to either the
opinion in Dr. Stenslie's Psychiatric Review Technique form or
Dr. Ibarra's concurrence with Dr. Stenslie's opinion.  The ALJ,
however, made no mention of Dr. Jasper's opinions concerning
Czarnionka's inability to interact with fellow employees and
supervisors, which was articulated under the heading "Current
Level of Functioning" in the Comprehensive Psychological Profile
that resulted from the consultative examination that Dr. Jasper
performed at the request of Disability Determination Services.
That is a problem.

     As a general matter, the Social Security Administration is
required to consider and evaluate every medical opinion it
receives.  See 20 C.F.R. §§ 404.1527(b)&(c) & 416.927(b)&(c).
More specifically, when assessing a claimant's RFC, an ALJ "must
always consider and address medical source opinions [and] [i]f
the [ALJ's] RFC assessment conflicts with an opinion from a

medical source, the [ALJ] must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 274184, at *7 (S.S.A. 1996). Here, the importance of addressing Dr. Jasper's opinion is underscored by two additional factors. First, the DRB's remand order directed the ALJ to assess Czarnionka's RFC in accordance with specific Social Security regulations that point out, among other things, that "[a] limited ability to carry out certain mental activities, such as limitations in . . . responding appropriately to supervision [and] co-workers . . . may reduce [a claimant's] ability to do past work and other work," 20 C.F.R. §§ 404.1545(c) & 416.945(c). Second, at Czarnionka's hearing, the VE testified that a person with a markedly impaired ability to interact with co-workers and supervisors, i.e., a mental limitation consistent with the one posited by Dr. Jasper, would not be able to perform any jobs in the national economy.

But, as noted, the ALJ said nothing about Dr. Jasper's opinion in the context of his RFC assessment and, necessarily, did not explain why he declined to adopt it. To be fair, the ALJ did mention Dr. Jasper's opinion in the section of his decision devoted to step three: "Dr. Jonas testified that the findings and opinions of Lawrence G. Jasper, PhD (Exhibit 23F) did not support the conclusion that the claimant's mental health

condition met Listing 12.04." Tr. 319. But, whether Dr.
Jasper's opinion supports a determination that Czarnionka's
mental-health condition meets a listing says nothing about the
weight that should be accorded to Dr. Jasper's opinions
regarding Czarnionka's abilities to interact with co-workers and
supervisors. See Fortin v. Astrue, No. 10-cv-441-JL, 2011 WL
2295171, at *8 (D.N.H. May 18, 2011), report and recommendation
approved, 2011 WL 2224771 (D.N.H. June 7, 2011). Thus, Dr.
Jonas's opinion about Dr. Jasper's opinion did not relieve the
ALJ of his obligation to evaluate Dr. Jasper's opinion of
Czarnionka's mental functional capacity. The ALJ's failure to
evaluate Dr. Jasper's opinion on Czarnionka's functional
capacity is an error that requires remand. See Costa v. Astrue,
No. 1:09-cv-441-JL, 2010 WL 4365868, at *7 (D.N.H. Nov. 3,
2010).

## Conclusion

For the reasons detailed above, I recommend that: (1) the
Acting Commissioner's motion for an order affirming her
decision, document no. 14, be denied; and (2) Czarnionka's
motion to reverse the decision of the Acting Commissioner,
document no. 12, be granted to the extent that the case is
remanded to the Acting Commissioner for further proceedings,
pursuant to sentence four of 42 U.S.C. § 405(g).

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge


July 19, 2013

cc:  Jared P. O'Connor, Esq.
     Robert J. Rabuck, Esq.